**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **KIMBERLY YVETTE FLORES,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 7:11-CV-134-O (BF)** |
| | § | |
| **COMMISSIONER OF THE** | § | |
| **SOCIAL SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This is an appeal from the decision of the Commissioner of the Social Security

Administration ("Commissioner") denying the claim of Kimberly Yvette Flores ("Plaintiff") for

Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act (the "Act"). The Court considered Plaintiff's Brief, filed

on February 13, 2012, and Defendant's Brief, filed on March 5, 2012. Plaintiff did not file a reply

brief. The Court reviewed the record in connection with the pleadings. For the following reasons,

the Court recommends that the District Court AFFIRM the final decision of the Commissioner.

**Background**[1]

**Procedural History**

On May 29, 2007, Plaintiff filed her applications for DIB and SSI alleging disability

beginning May 25, 2006, due to chronic obstructive pulmonary disease ("COPD"), asthma, and

degenerative arthritis in back and spine. (Tr. 123-29, 146.) Plaintiff's applications were denied

initially and upon reconsideration. (Tr. 70-77, 81-86.) Pursuant to Plaintiff's request, an

---

[1] The following background facts are taken from the transcript of the administrative
proceedings, which is designated as "Tr."

Administrative Law Judge ("ALJ") conducted a hearing on March 18, 2009, whereby Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 35-61.) On April 15, 2010, the ALJ issued an unfavorable decision finding Plaintiff not disabled within the meaning of the Act. (Tr. 14-28.) Plaintiff requested review to the Appeals Council, but that request was denied on August 22, 2011. (Tr. 1-5.) Accordingly, the ALJ's decision became the final decision of the Commissioner, from which Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

**Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on March 5, 1961, making her 48 years of age at the time of the hearing. (Tr. 38.) She has a high school education. (Tr. 39.) Plaintiff has past relevant work experience as a polypak heating sealer, a packaging supervisor, a retail manager, and a cashier/checker. (Tr. 27.)

**Plaintiff's Relevant Medical Evidence[2]**

A psychiatric evaluation of Plaintiff was performed by psychiatrist, Dr. John Wamble on April 1, 2008. (Tr. 284-286.) The doctor diagnosed Plaintiff with Major Depressive Disorder, recurrent, severe, in partial remission. In Axis III, he found COPD, Degenerative Joint Disease ("DJD"), and Presbyopia. Dr. Wamble assigned Plaintiff a GAF score of 45.[3] Dr. Wamble noted "[t]he patient has been symptomatic for depression since she got out of prison in 2003 but things have continued to go downhill for her and her symptoms have intensified so that she finally presented for treatment. She has never been treated for depression prior to this." (Tr. 284.) The

---

[2] This summary of the medical evidence was provided by Plaintiff. (Pl.'s Br. at 2-4.)

[3] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM). A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *See id.*

doctor also made a notation that Plaintiff reported an increase in her feelings of depression, and that she has developed anhedonia, a lack of energy, and insomnia. (Tr. 284.)

Dr. Wamble additionally noted, "[t]his 47-year-old divorced Caucasian female is clearly depressed and under a considerable amount of stress related to her polysubstance dependant mother and trying to maintain a household and trying to get along with a mother she had quite severe difficulties with growing up." (Tr. 285.) He opined that she did not have Obsessive-Compulsive Disorder. (Tr. 285.) Finally, he noted that Plaintiff's financial problems inhibit her ability to get proper treatment for her Presbyopia, DJD, and COPD. (Tr. 285-286.)

Plaintiff had an exam which was compatible with an early lesion amenable to transanal excision, this excision was performed on June 30, 2009. A final pathology report had revealed an adenocarcinoma arising from a tubulovillous adenoma. The final pathology revealed a T3 lesion. A digital examination revealed good healing at the primary tumor site. The ALJ found Plaintiff was doing well after a transanal excision of a rectal cancer. (Tr. 22.)

By December of 2009, Plaintiff had successfully completed adjuvant chemotherapy and radiation. (Tr. 542.) However, in January of 2010, things weren't going so well. Plaintiff saw Dr. Lichliter in January 2010, at which time he did abdominoperineal resection. At that time, a colostomy was also placed. There was no residual carcinoma identified, but 12 lymph nodes were analyzed and two of them had metastatic adenocarcinoma. In March, Plaintiff developed a pelvic abscess, and was hospitalized. The abscess was drained and she was placed on antibiotics. In May of 2010, Plaintiff was feeling a lot better and she discussed going through a second round of adjuvant chemotherapy with Dr. Praveen Reddy at the Texoma Cancer Center. (Tr. 680-81.)

**Plaintiff's Testimony at the Hearing**

Plaintiff, represented by counsel, testified on her own behalf at the hearing held on March 18, 2009. (Tr. 35-61.) She testified regarding many different employment positions she held in the past, but her most significant position was that of a supervisor at Texas Recreation. (Tr. 40-45.) She stated that she worked at Texas Recreation for ten years, both in production and as a supervisor. (Tr. 41.) At times, she supervised fifty employees and she had the authority to fire employees. (Tr. 41.) Plaintiff left the company because she got tendonitis in her hands and she wasn't paid very well. (Tr. 41.) Plaintiff testified that she went to prison in 2001 for a drug conviction. (Tr. 39-40, 44-45.) Plaintiff said that during a typical day she lays around a lot and sometimes washes the dishes. (Tr. 46.) She testified that sometimes she does her own laundry and prepares the meals. (Tr. 46.) She said that she does not go grocery shopping, but she testified that she has a driver's license and she drove herself to the hearing. (Tr. 46-47.) Plaintiff stated that she attends church at Allendale Baptist when she has transportation. (Tr. 47.) She testified that she loves to do puzzles and read books, but her eyesight is bad so usually she just watches television. (Tr. 47-48.)

Plaintiff stated that she is unable to work due to her back pain and COPD. (Tr. 49.) She testified to experiencing pain in her hands due to arthritis and possible carpal tunnel. (Tr. 49.) She also has pain in her hip due to arthritis. (Tr. 49.) Plaintiff testified that she uses Albuterol for her COPD, but she still coughs all the time and has trouble with extreme temperatures. (Tr. 50.) Plaintiff stated that she was diagnosed with depression at Helen Farabee Regional MHMR Centers ("Helen Farabee"). (Tr. 51.) She was prescribed Cymbalta and Trazodone and Plaintiff said that the medications help her most of the time. (Tr. 51.) She said that when she is not on her

4

medication she worries a lot and has trouble coping. (Tr. 51.) She said that she stopped going to

Helen Farabee because of transportation issues, and that she is currently out of her medication.

(Tr. 51.) She also testified to taking Lexapro which helped her even more. (Tr. 52.) Plaintiff

testified to helping with Vacation Bible School in the summer of 2008. (Tr. 53.)

**The Hearing**

A VE, Clifton King, Jr., also testified at the hearing regarding jobs in the national

economy. He stated that Plaintiff has past relevant work experience as a poly pack heating

sealer, a packaging supervisor, a laundry laborer, a fast food worker, a cashier II, a

cashier/checker, and a caterer helper. (Tr. 57-58.) She also attempted to work as a telephone

solicitor, a janitor, and a manager of a retail store. (Tr. 58.) The ALJ posed a hypothetical to the

VE: assume someone who can occasionally lift and carry, or push and pull, twenty pounds;

frequently lift and carry, or push and pull, ten pounds; stand and walk for six hours in an eight-

hour workday; sit for six hours in an eight-hour workday; occasionally stoop, crouch, and kneel;

cannot work in extreme temperatures; and cannot work in concentrated exposure to dust, fumes,

smoke, and chemicals. (Tr. 58.) She asked the VE if that hypothetical person, with the same age,

education, and experience as Plaintiff, would be able to perform Plaintiff's past relevant work.

(Tr. 58-59.) The VE indicated that hypothetical person would be able to perform the positions of

a "cashier/checker, light, semi-skilled, SVP: 3" DOT[4] #211.462-014; and a "manager retail store,

light, skilled, SVP: 5" DOT #185.167-046. (Tr. 57-59.)

---

[4] The Dictionary of Occupational Titles ("DOT") is a standardized volume of job
definitions that the Social Security Administration relies on at steps 4 and 5 of its five-step
disability determination process.  SSR 00-4p, 2000 WL 1898704, at *2.

Upon cross-examination, Plaintiff's counsel asked the VE to add the limitations that the hypothetical person could only stand and walk for two hours in an eight-hour workday; occasionally push and pull ten pounds; and can only reach, handle, and finger occasionally. (Tr. 59.) The VE responded that hypothetical person would not be able to perform any of Plaintiff's past work or any other jobs in the national economy. (Tr. 59.) The VE testified that his testimony did not conflict with the provisions in the DOT. (Tr. 59.)

**The Decision**

The ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[5] However, before she evaluated the claim, she found that Plaintiff met the insured status requirements for DIB under the Act through December 31, 2007. (Tr. 20.) Then, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 25, 2006. (Tr. 20.) At step two, the ALJ found that the medical evidence established that Plaintiff had the following severe impairments: COPD/asthma with a tobacco use disorder; lumbosacral facet arthrosis and degenerative changes with chronic back pain; degenerative changes of the thoracic spine; osteopenia/early osteoporosis; fracture of the right eighth rib and degenerative changes of the shoulders; gastritis; and carcinoma in situ. (Tr. 20.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23.)

---

[5] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. §§ 404.1520, 416.920.

Before proceeding to step four, the ALJ assessed Plaintiff's RFC. She determined that Plaintiff retained the RFC to lift or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; sit for six hours in an eight-hour workday; and occasionally stoop, crouch, and kneel, but cannot work in temperature extremes or in environments with concentrated exposure to dust, fumes, smoke, and chemicals. (Tr. 25.) At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a packaging supervisor and a cashier/checker. (Tr. 27.) Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through the date of the ALJ's decision. (Tr. 27.)

## Standard of Review

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  Those steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.    An individual who does not have a "severe impairment" will not be found to be disabled.

7

3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.      If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5.      If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present.

*Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

## Issues

1.      Whether substantial evidence exists to support the ALJ's finding that Plaintiff's non-exertional impairments are not severe.

2.      Whether the Appeals Council properly denied review of the ALJ's decision.

## Analysis

**Whether substantial evidence exists to support the ALJ's finding that Plaintiff's non-exertional impairments are not severe.**

The ALJ determined that Plaintiff has the following severe impairments: COPD/asthma with a tobacco use disorder; lumbosacral facet arthrosis and degenerative changes with chronic back pain; degenerative changes of the thoracic spine; osteopenia/early osteoporosis; fracture of the right eighth rib and degenerative changes of the shoulders; gastritis; and carcinoma in situ. Plaintiff contends that her bipolar disorder and depression should have been found to be severe impairments, and that the omission indicates the ALJ erred in her Step 2 determination and substantial evidence does not support her findings.

The ALJ found that although Plaintiff has medically-determinable impairments of depression and anxiety, the impairments, considered singly and in combination, "do not cause any limitations in the claimant's ability to perform basic mental work activities and, therefore, are not 'severe'." (Tr. 22.) The ALJ also cited to *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985), in her decision. (Tr. 22.)

In the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's

9

ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id.* at 1104. The Social Security Administration has additional regulations that govern the evaluation of the severity of a claimant's mental impairment. 20 C.F.R. § 404.1520a. The regulations require the ALJ to use a "special technique" that involves identifying each mental impairment specifically, rating the degree of functional limitation resulting from each impairment in four broad functional areas, and using those ratings to determine the severity of each impairment. *Id.* The regulations also require the ALJ to document her application of the special technique to the claimant's mental impairments. 20 C.F.R. § 404.1520a(e). Violation of a regulation constitutes reversible error and requires remand only when a reviewing court concludes that the error is not harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

Here, Plaintiff contends that her bipolar and depressive disorders should have been found to be severe impairments; or in the alternative, at least considered in formulating Plaintiff's RFC. Neither party disputes that Plaintiff has an acknowledged mental impairment of depression. However, Defendant argues that there is no medical evidence to support Plaintiff's bipolar disorder. This Court agrees.

In Plaintiff's brief, she fails to point to any medical evidence to substantiate her bipolar disorder, and this Court has found none. Instead, the only records documenting Plaintiff's mental impairments indicate that Plaintiff does not have a bipolar disorder. Plaintiff was evaluated by Dr. Wamble on April 1, 2008, and in his evaluation he indicated "[n[o signs or symptoms of bipolar disorder or obsessive-compulsive disorder are seen." Plaintiff failed to provide any medical records indicating that she has a bipolar disorder, or diagnosing her with a bipolar disorder. Furthermore,

she did not testify at the hearing regarding her bipolar disorder. Thus, there is no objective medical evidence or subjective complaints to support an impairment of a bipolar disorder. The ALJ made no errors of law by failing to find Plaintiff's alleged bipolar disorder a severe impairment. Further, the ALJ made no error by not even considering bipolar disorder as a medically determinable mental impairment. Plaintiff's contention regarding her bipolar disorder fails.

In regards to Plaintiff's depression, the evidence is scarce. The only medical records documenting a depressive disorder are from Helen Farabee. Plaintiff saw Dr. Wamble on April 1, 2008 for a psychiatric evaluation. Plaintiff indicated to the doctor that she had never been treated for depression, but she had been experiencing its accompanying symptoms since she got out of prison in 2003. Plaintiff complained of a lack of energy, anhedonia, and insomnia. She also stated that her depression had been intensified once she moved in with her mother, causing her to be irritable and angry. The doctor noted that Plaintiff clearly suffered from depression and anxiety. He also made the notations that she was alert, oriented, and cooperative; she did not have any psychosis, delusions, or hallucinations; her memory was average; and she denied suicidal or homicidal ideation. The doctor diagnosed Plaintiff with Major Depressive Disorder, recurrent, severe, and in partial remission. Dr. Wamble prescribed Lexapro for Plaintiff.

Plaintiff reported to Helen Farabee on June 10, 2008. (Tr. 291.) She told the qualified mental health professional ("QMHP") that she had a reduction in her symptoms of depression since taking her medication. She reported sleeping better, a renewed interest in activities, and no longer feeling driven to overeat. She stated that she was thinking about helping with Vacation Bible School at her church, and that she does most of the household chores and cooking for her mother and sister. The QMHP noted Plaintiff's progress as good and that her functioning had improved. On August 13,

11

2008, Plaintiff reported an increase in symptoms and trouble sleeping. Plaintiff told the QMHP that she just started taking Trazodone for her insomnia. The QMHP advised Plaintiff to give the medication some time to start working. Her progress was noted as poor. This was Plaintiff's last documented visit to Helen Farabee.

At the hearing on March 18, 2009, Plaintiff indicated that her medications help with her depression most of the time. She testified that she quit receiving treatment at Helen Farabee due to transportation issues, and that she was currently out of her medication. In March of 2010, Plaintiff denied any symptoms of depression or suicidal ideation. (Tr. 847.) Plaintiff did not seek treatment for her depression until after she requested a disability hearing in May of 2007. (Tr. 295.)

The diagnosis of an impairment does not establish a disabling impairment or even a significant impact on that person's functional capacity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) (noting that the mere presence of some impairment is not disabling per se). Although Dr. Wamble diagnosed Plaintiff with Major Depressive Disorder, he also included in his diagnosis that it was in partial remission, and largely due to the stress of living with her mother. Dr. Wamble only saw Plaintiff for that one visit on April 1, 2008. Subsequently, Plaintiff reported to the QMHP at Helen Farabee that her medication was working and her symptoms of depression were greatly reduced. An impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability. *See Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988). Plaintiff also testified at the hearing that her medication helped with her depression. While Plaintiff did report insomnia to the QMHP in August 2008, she also had just started taking a new medication, for which the QMHP advised to give some time to start helping. In 2010, Plaintiff denied depression.

The ALJ utilized the "special technique" that is outlined in 20 C.F.R. § 404.1520a, and documented her application of the technique, in finding that Plaintiff's depressive disorder was not a severe impairment. To rate the degree of Plaintiff's functional limitations, the ALJ analyzed the four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c); 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1).

In activities of daily living, the ALJ found Plaintiff to have "mild" restrictions. (Tr. 23.) Plaintiff testified at the hearing that she washes dishes, does laundry, and cooks. She testified that she attends church when she is able, watches television, has a driver's license, and drove herself to the hearing. Regarding Plaintiff's social functioning, the ALJ determined that she had "mild" limitations. (Tr. 23.) The ALJ reasoned that Plaintiff interacts with her mother, her sister, her son, and her son's girlfriend; visits others occasionally; and taught Vacation Bible School. The next functional area is concentration, persistence, or pace. The ALJ again found that Plaintiff only had "mild" limitations. (Tr. 23.) Plaintiff testified that she loves to do puzzles and read books, but since her eyesight is bad, she just watches television. In the last functional area, episodes of decompensation, the ALJ determined that Plaintiff had no episodes of decompensation that lasted for an extended duration. (Tr. 23.) The ALJ reasoned that there was no evidence that Plaintiff needed a highly supportive environment, or that an increase in mental demands or a change in her environment would cause decompensation.

According to the regulations, if the degree of limitation in the first three functional areas is "none" or "mild" and the fourth functional area is "none", the ALJ will generally find that the mental impairment is not severe. *See* 20 C.F.R. § 404.1520a(d)(1). The only caveat is if the evidence

otherwise demonstrates more than a minimal limitation in the Plaintiff's ability to perform basic work activities. *See id.; White v. Astrue,* No. 4:08–CV–415–Y, 2009 WL 763064, at *10 (N.D. Tex. Mar. 23, 2009). The Court finds that the evidence does not demonstrate more than minimal limitations in Plaintiff's work-related abilities. Thus, the ALJ did not err in her Step 2 determination and substantial evidence supports her finding.

Finally, Plaintiff's contention that the ALJ must consider non-severe limitations when formulating Plaintiff's RFC is accurate. *See* SSR 96-8p, 1996 WL 374184, at *5. However, Plaintiff's argument that the ALJ failed to consider her depression in assessing her RFC is without merit. In the ALJ's findings, she indicated that Plaintiff's depression did not meet the "B" or "C" criteria for a listed mental impairment and did not produce more than mild limitations on Plaintiff's work-related abilities. (Tr. 23.) Hence, the ALJ found Plaintiff's depressive disorder did not result in any work-related limitations that necessitated being a part of Plaintiff's RFC. The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988).

Substantial evidence supports the ALJ's finding that Plaintiff's depressive disorder was not a "severe" impairment. The ALJ considered this non-severe impairment when formulating Plaintiff's RFC. The ALJ used the correct standard of severity and the "special technique" for mental impairments, and therefore made no errors of law in her Step 2 determination.

**Whether the Appeals Council properly denied review of the ALJ's decision.**

In conjunction with her request for review by the Appeals Council, Plaintiff submitted new medical evidence obtained after the hearing. (Tr. 575-1185.) On August 22, 2011, the Appeals Council denied Plaintiff's request for review, stating that "we considered the reasons you disagree

with the decision and the additional evidence. . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1-5.) In her brief, Plaintiff argues that the Appeals Council failed to properly consider the new medical evidence because they did not develop the record regarding how chemotherapy and radiation would affect Plaintiff's ability to work. (Pl.'s Br. at 7.)

The Regulations provide a claimant the opportunity to submit new and material evidence to the Appeals Council for consideration when deciding whether to grant a request for review of an ALJ's decision. 20 C.F.R § 404.970(b). For new evidence to be considered material, there must exist "the reasonable possibility that it would have changed the outcome of the Secretary's determination." *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir. 1994) (quoting *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir. 1981). Additionally, to be considered material, the evidence must "relate to the time period for which benefits were denied." *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir. 1985). Evidence of a later-acquired disability or a subsequent deterioration of a non-disabling condition is not material. *Id.*

Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). A court considering that final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *Higginbotham v. Barnhart*, 163 F.App'x 279, 281-82 (5th Cir. 2006).

Based on its internal procedures, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it. *Higginbotham,* 405 F.3d at 335 n. 1 (referring to a memorandum from the Commissioner's Executive Direct of Appellate Operations dated July 1995). Nevertheless, where new medical evidence is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination, several judges have found that the case should be remanded so that the Appeals Council can fully evaluate the treating source statement. *See Brown v. Astrue,* No. 3-10-CV-00275-O-BK, 2010 WL 3895509, at *4-6 (N.D. Tex. Sept. 13, 2010; *Lee v. Astrue*, No. 3–10–CV–155–BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010); *Stewart v. Astrue*, No. 7–07–CV–052–BD, 2008 WL 4290917, at *4 (N.D. Tex. Sept.18, 2008).

Here, Plaintiff submitted approximately six hundred and ten pages of new medical evidence, most of which is dated subsequent to the ALJ's decision of April 15, 2010. Plaintiff failed to cite to any of the new evidence in her brief, and instead made the blanket assertion that the Appeals Council failed to consider how the chemotherapy and radiation would affect her ability to work. Nevertheless, this Court analyzed the entirety of the new medical evidence and discounted the evidence that was not material because it did not relate to the time period for which benefits were denied. *See Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir. 1985). The new evidence regarding Plaintiff's chemotherapy and radiation is not material because it post-dated the ALJ's decision. Plaintiff did not receive her second round of adjuvant chemotherapy until May 25, 2010. (Tr. 695.) Plaintiff completed her first round of adjuvant chemotherapy and radiation in December of 2009 and those records were submitted to the ALJ after the hearing, but not included as new evidence provided to the Appeals Council. (*See* Tr. 4-5, 541-42.)

The new and material evidence consists of records from United Regional Health Care

System ("United Regional") dated March 15, 2010 through March 31, 2010. Those records detail

Plaintiff's hospitalization on March 17, 2010, due to her diagnosis of a pelvic abscess. (Tr. 577-

78.) On March 15, Plaintiff complained of pain in her rectal area, loss of appetite, weight loss,

and chills. (Tr. 594.) On March 17, she was admitted to the hospital because of her pain in the

rectal area. (Tr. 577.) The procedure for draining the abscess was documented and it was noted

that there were no complications at the time of the procedure. (Tr. 587.) On March 21, Dr.

Praveen Reddy noted that Plaintiff felt better and the pain control was adequate. (Tr. 855.) On

March 22, progress notes indicated that Plaintiff was doing better and that her pain was better.

(Tr. 859.) On March 23, the doctor indicated that Plaintiff was doing well, and that Plaintiff told

the doctor her pain had "improved a whole lot." (Tr. 860.) Again, a day later, it was noted that

Plaintiff's pain was better, her condition was improving, and that she felt well. (Tr. 862-63.) On

March 25, there were no new problems and Plaintiff's pain control was good. (Tr. 864.) On

March 26, Plaintiff reported feeling nauseated, and on March 27, she indicated a decrease in her

appetite. (Tr. 865-66.) On March 29, Plaintiff told the doctor that her pain was a whole lot better.

(Tr. 868.) Finally, on March 31, 2010, Dr. Praveen Reddy noted that Plaintiff's pain was very

well controlled with pain medication, and that Plaintiff felt well. (Tr. 577, 871.)

This Court finds that the new medical evidence is not so inconsistent with the ALJ's

findings that it undermines the ultimate disability determination. The new and material evidence

reflects that Plaintiff had an abscess, but after it was drained she was doing fairly well. The

doctor also noted that Plaintiff's pain medication was controlling her pain. An impairment that

can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of

17

disability. *See Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988). The records regarding

Plaintiff's second round, and subsequent rounds, of chemotherapy and radiation were not

material because they post-dated the ALJ's decision denying benefits.[6] Substantial evidence

supports the ALJ's decision, and the new and material evidence does not dilute the record to

such an extent that her decision is insufficiently supported. Finally, the Appeals Council was not

under a duty to provide a detailed discussion about the new, material evidence from United

Regional.  *See Higginbotham,* 405 F.3d at 335 n. 1. Accordingly, this Court finds no reason to

remand the case to the Commissioner.

## Recommendation

For the foregoing reasons, this Court recommends that the District Court AFFIRM the final

decision of the Commissioner, as it is supported by substantial evidence and the Commissioner did

not commit prejudicial legal error.

SO RECOMMENDED, September 5, 2012.


_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court notes that Plaintiff filed another disability application on April 22, 2010 and was found to be disabled beginning April 1, 2010. (Tr. 2.) Although this disability date was two weeks prior to the ALJ's decision, Plaintiff failed to submit any medical records from April 1, 2010 to April 15, 2010, thus there was no evidence within that time period for the ALJ or the Appeals Council to review.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).